## ROLKER *v.* GREAT WESTERN INSURANCE COMPANY.

September, 1866.

Reversing 8 *Bosw.* 222.

An ambiguous policy of insurance is to be construed liberally in favor of the insured.

A marine policy, insuring A. & Co., " on account of whom it may concern for outward shipments and homeward, to be for account of themselves and to be consigned to them by invoice and bill of lading,"—*Held*, on a view of the whole policy, not to mean outward shipments on account of whom it may concern, and homeward shipments only when made by invoice and bill of lading, and for account of themselves; but to include shipments on account of whom it may concern, whether outward shipments (approved by the insurers under another clause of the policy) or homeward shipments on account of the insured, or homeward shipments consigned to them on account of whom it might concern, by invoice and bill of lading.

The word " consigned " implies agency, not ownership in the consignee.

Under an open policy, reciting payment of premium at a specified rate, but providing that the premium on each risk is to be fixed at time of indorsement, according to the rates of the company when the character of the vessel and time of sailing are known,—if the insured, on giving timely notice of a shipment, state all the facts, the circumstance that the vessel was out of time does not exonerate the insurers; but it is for them to object on that account, and require the proportionate premium.

August Rolker and others, constituting the firm of Rolker, Mollmann & Co., sued the Great Western Insurance Company

in the New York superior court on a policy of marine insurance.

The material part of the policy was as follows : the words which were written being here indicated by italics. " By the Great Western Insurance Company, *A. Rolker, Mollmann & Co.,* on account of *whom it may concern, for outward shipments and homeward, to be for account of themselves and to be consigned to them by invoice and bill of lading.* In case of loss, to be paid to *them.*" Do make insurance and cause to be insured, lost or not lost, at and from *New York, to port or ports in the West Indies, and vice versa. Also at and from St. Domingo to Philadelphia and Boston. On specie and merchandise, or either, etc.* . . *No outward shipment to be considered insured until approved and indorsed on this policy by this company.* . . *Homeward shipments to be reported as soon as ascertained.* . . *Also to cover such other risks as may be approved and indorsed on this policy.* . . *It is agreed that this policy shall also cover shipments consigned to A. Rolker, Mollmann & Co., and addressed to Veure A. Merentie & Co.*"

The plaintiffs' correspondents at Port au Prince shipped a quantity of coffee belonging to themselves by the brig Delafield of New York, consigning it under invoice and bill of lading to the plaintiffs as their factors for sale. The brig sailed for New York, December 21, 1856. On the 6th of February following the plaintiffs received advice of the shipment, and communicated the fact to the company, with a request to have it entered as a risk under the policy, which, however, the company refused to do, but without assigning a reason.

The vessel was never heard from.

At the trial the complaint was dismissed, on the ground that the plaintiffs were not interested in the coffee shipped by the Delafield, otherwise than that the same was coming under consignment to them, and that the policy did not cover such homeward risk.

*The superior court,* at general term, affirmed the judgment on the ground that the words in the policy, " on account of whom it may concern," applied only to outward shipments, and that the policy covered only such homeward shipments as

were owned by Rolker, Mollmann & Co. The court did not pass on the question whether these goods could be covered by the clause in relation to goods consigned to A. Rolker, Mollmann & Co., and addressed to Veure A. Merentie & Co., as these goods were not so addressed.

Plaintiffs appealed to this court.

*W. F. Allen*, for plaintiffs appellants.—The fact that the ship had sailed on the homeward voyage before the insurance was effected, did not exclude the shipment from the benefit of the policy. Barr *v.* Gibson, 5 *Mees & W.* 390; Paddock *v.* Franklin Ins. Co., 11 *Pick.* 227; 1 *Phill. on Ins. Pl.* 925, p. 518, 4 ed.; Coggeshall *v.* Am. Ins. Co., 3 *Wend.* 283. The intention of the parties is to be sought in the contract itself, and effect is to be given to this intent. Aquilar *v.* Rogers, 7 *S. R.* 421; Robertson *v.* French, 4 *East* 135; Hoffman *v.* Ætna Ins. Co., 32 *N. Y.* 405; Goix *v.* Low, 1 *Johns. Cas.* 341; 1 *Phil. on Ins.* 82. The whole policy must be taken together. 1 *Phil. on Ins.* 84; Holmes *v.* Charlestown Fire Ins. Co., 10 *Metc.* 211; Ward *v.* Whitney, 8 *N. Y.* 442; Norton *v.* Woodruff, 18 *N. Y.* 363. The policy is to be construed most strongly against the insurer. *Broom Leg. Max.* 254, *et seq.;* Mayor *v.* Isaacs, 6 *Mees. & W.* 612; Edis *v.* Bury, 6 *Barn. & C.* 433; Miller *v.* Thompson, 4 *Scott N. R.* 104. The terms of a promise being doubtful must be construed in favor of the promisee, especially in contracts of insurance. 1 *Phil. on Ins.* 211, and case cited above; Potter *v.* Ont. & Liv. Mut. Ins. Co., 5 *Hill,* 149; Black *v.* Bull, 1 *M. & Rob.* 169.

*William M. Evarts,* for defendants, respondents.

BY THE COURT.—LEONARD, J.—The question in this case turns upon the right interpretation of the language of the policy. The sentence occurring at the beginning, in which the interests to be covered are sought to be described, is badly constructed, and some alteration of punctuation or language is necessary in order to make it accurately express the meaning which either party seek to attach. Are the words " and to be consigned to them by invoice and bill of lading," to be con-

strued so as to diminish or enlarge the remedy of the plaintiffs under the policy, in the case of loss by the perils insured against on homeward shipments?

The meaning attached to this sentence by the plaintiffs requires it to be read as if three separate kinds or description of shipments were included, and that it should read, in effect, as if constructed in the following manner; "The Great Western Insurance Company insure A. Rolker, Mollman & Co., on account of whom it may concern, for outward shipments, and homeward shipments for account of themselves, and shipments consigned to them by invoice and bill of lading."

This reading maintains the punctuation as it occurs in the policy, or, at least, requires no alteration in it, and drops the words " to be," which are twice used in the sentence.

The reading insisted on by the defendants requires a change in the punctuation so as to place the comma after the word "shipments," and claims all that follows the word "homeward" to have been used as a description or qualification of the interests insured, and requiring such interests to be for account of the plaintiffs, and also to be such as are consigned to them in a particular manner only, viz., both by invoice and bill of lading.

The latter reading confines the liability of the company, even in the case of the actual ownership of the shipments by the plaintiffs, to the form of the indicia of ownership, as manifested by the bill of lading and invoice, and makes the words " to be for account of themselves," not only as a qualification or description of the " homeward shipments," but also to prevent the application of the words, " on account of whom it may concern," to any part of the latter portion of the sentence. It in effect excludes consignments to the plaintiffs for sale, or of which the plaintiffs are not the actual owners, from the operation of the policy.

The defendants urge, as a reason for the construction insisted on by them, that, as to outward shipments, whether for account of the plaintiffs or other parties, the company retained control, in its power of approving or rejecting a shipment, while, as to homeward shipments, this power not being re-

tained, it was essential to limit the risks which they were willing to asssume to such goods as were actually owned by the plaintiffs, and were accompanied by certain indicia.

It was clearly to the defendants' advantage so to limit their risk; but the question is, have they done so? The stipulation in the policy, that the rate of two per cent. on the whole sum of $50,000 which they had been paid, was nominal, and that the premium on each risk was subject to additions and deductions to conform to the rates of the company, when the character of the vessel and the time of sailing should be known, appears to be a sufficient protection, and the exercise of a sound discretion under this clause to be more in conformity with the interests and the practice of insurance companies, than the exclusion of a whole class of marine risks, which are ordinarily considered desirable at suitable rates. The provision of the policy, that homeward shipments are to be reported as soon as ascertained, carries a strong suggestion that shipments of an unknown or unexpected character, such as consignments for sale, would be made. It is apparent that the reason suggested by the defendants is not at all conclusive.

It is also urged, by the defendants, that the provision " to cover such other risks as may be approved and indorsed on this policy" must have been added in reference to homeward shipments for account of consignors which the plaintiffs might desire to insure, and which the company might see fit to cover. This argument would have more force if the policy were not limited to voyages between the West Indies and New York, and St. Domingo and Philadelphia and Boston. The plaintiffs might have other homeward consignments from ports in South America, or various other foreign ports, which the parties might agree upon insuring, and to which this clause might as well refer, as to the subject suggested by the argument.

The clause in reference to consignments to Rolker, Mollman & Co., addressed to Veure A. Merentie & Co., is also referred to. as strongly maintaining the position of the defendants. It must be observed, however, that such consignments are not homeward shipments consigned to the plaintiffs by invoice and bill of lading, and not, therefore, within the description of in-

terests covered by any interpretation contended for under the first clause of the policy. It required the special clause inserted on this subject, in order to cover shipments so made, without a new special agreement after they had been ascertained and reported.

It is said, also, that the clause " on account of whom it may concern " applies only to outward shipments, because such application satisfies their use, and the other words, " for account of themselves," as limiting the class of homeward shipments, would be utterly insensible. This argument assumes that there are only two descriptions of interests covered, and that homeward shipments only are included when they are for account of the plaintiffs exclusively. An interpretation which admits that the policy covers three classes of interests, viz : shipments outward, homeward for their own account, and on consignment by invoice and bill of lading, will make the whole harmonious, and free from any antagonistic force requiring one clause to defeat or impair the sense of the other.

The words " for account of themselves," by such a construction, are relevant to describe a class of homeward shipments, and leaves the former clause to its unrestricted signification.

A construction which will give an unlimited and customary signification to every part of a contract is to be preferred.

It is also said that at the time the risk was notified to the company, it was not insurable except at a rate of premium adjusted to the fact of the vessel being out of time.

It is not in evidence what is the usual time of a sailing vessel from Port au Prince to New York ; but, assuming that the Delafield was out of time, it was incumbent on the defendants to take the risk, in " conformity to the rates of the company, when the character of the vessel and time of sailing are known," pursuant to the terms of the policy providing for such a case.

The defendants, when the shipment was ascertained and they were notified of it, and applied to for the purpose of entering it on the pass-book as an admitted risk under the policy, refused to do so, and refused to give any reason for their refusal. The plaintiffs gave all the facts in their notice— the name of the vessel, when and where built, and the time of

IV.—6

sailing. There was no deception, no attempt to impose on the company as to the facts. If the vessel was out of time it was for the company to mention it, and claim its rights as to the premium. The plaintiffs appear to be in no fault in this respect.

These were all the considerations urged at the argument of this appeal by the learned and very able counsel for the defendants, to sustain the restricted construction which saves the company from liability for the loss of the shipment by the Delafield.

The shipments was consigned to the plaintiffs by invoice and bill of lading, and although it was not the property of the plaintiffs, there are sufficient considerations, in my opinion, to hold the risk to be included within the intent of the parties, and the meaning and terms of the contract.

The custom is well understood that factors insure the property of their consignors, both against marine risks while in transit to them, and against fire while in their custody. The factor has an insurable interest in both cases. But in the present case the plaintiffs procure general words to be inserted in the policy, " for account of whom it may concern," which will cover their own property, and that which they have an interest in as factors only, and obtain the further stipulation, that in case of loss it is to be paid to them. Had the defendants intended the restricted signification now insisted on, they would have employed much more definite terms. The policy should read that the company insure "homeward shipments which are for account of themselves and consigned to them by invoice and bill of lading," if they intended so to limit their liability. The company have employed words which are capable of a more favorable reading for the insured, and they should be held to have extended the most liberal meaning of which the language is reasonably susceptible, as it was chosen by themselves.

As before remarked, the words " on account of whom it may concern " are not inconsistent with the words " for account of themselves," when the latter words are considered as merely words of description applying to the homeward shipments; using the words " to be consigned to them by invoice or bill of

lading" as descriptive of another class of shipments, not for account of the plaintiffs, the former stipulation, making the policy for account of whom it may concern, again becomes operative and important. The word " consigned," in its commercial sense, carries a decided implication that the property consigned is not the property of the consignee. The invoice carries no necessary implication of ownership. It is well understood that an invoice usually accompanies goods that are consigned to a factor for sale as well as in the case of a purchaser.

A fair and liberal construction of the language of the policy includes the coffee consigned to the plaintiffs and shipped by the Delafield; and in my opinion, the judgment should be reversed and a new trial ordered, with costs to abide the event.

A majority of the judges concurred.

Judgment reversed and new trial ordered, costs to abide the event.