## S. E. POWELL *et al.* v. R. G. WALLACE & Co.

1. LETTERS—*Copies as Evidence.* Letterpress copies may be introduced as secondary evidence, when it has been shown that the original letters have been directed and mailed, in the usual course of business, and there is preliminary proof from the party to whom they were addressed that he had made diligent search for them and they could not be found.

2. REPLEVIN—*Title—No Payment.* In an action for the recovery of personal property consigned to another, upon the condition that the title was to remain in the consignor until paid for, the plaintiff is not required to prove a failure of payment to entitle him to recover.

3. JUDGMENT, *Sustained.* The evidence and findings of the trial court examined, and found sufficient to support the judgment.

*Error from Greenwood District Court.*

REPLEVIN. The opinion states the case.

*T. L. Davis,* for plaintiffs in error.

*W. S. Marlin,* for defendants in error.

Opinion by GREEN, C.: On the 16th day of March, 1888, the defendants in error commenced this action in the district court of Greenwood county to recover certain personal property, being a bill of boots, shoes, and rubber goods, which they claim had been consigned to J. F. Myers, who was engaged in the boot and shoe business at Eureka. The plaintiffs below, being engaged in the wholesale trade at Kansas City, Mo., shipped the goods, as they allege, on the second day of November, 1887, to Myers, to be sold by him at retail, but with the understanding that they were to hold the title to the same, excepting what should be sold in the usual course of the retail trade, until the 15th day of February, 1888, when the goods were to be paid for or returned to them as consignors. Upon receipt of these goods they were placed in the store of Myers, at Eureka, with a stock of goods which he had removed from Olathe, where they remained, except such as were sold in the usual course of business, until the 27th day of January, 1888, when the entire stock was sold to the plaintiff in error, S. E. Powell. A jury was waived and a trial had before the court, at the May term, 1888, and judgment was rendered for the plaintiffs below for the possession of the goods.

It is insisted by the plaintiffs in error that the judgment of the district court should be reversed, for a number of reasons, which we will notice in their order.

I. It is first claimed that the court below.permitted press copies of letters purporting to have been written by the plaintiffs below to·J. F. Myers to be read in evidence, over the objections of the defendants below, when no proper foundation had been laid for their admission. The evidence disclosed the fact that, before the shipment of the goods in controversy, the traveling salesman of the plaintiffs below had called upon the manager of Mr. Myers's store, before the removal of the stock of goods from Olathe, and prevailed upon

42 — 44 KAS.

him to go to Kansas City and make a selection of goods to be sent to Eureka. After the selection of the goods, the balance of the negotiations took place by correspondence. Two letters were written, one on the 29th and another on the 31st of October, 1887, and addressed to Mr. Myers at Eureka, Kansas; and press copies of these letters were introduced, of which plaintiff, in error complain.

It seems from the evidence that these letters were mailed, as stated by one of the witnesses, with the regular office letters; that they had been given to the office boy whose duty it was to mail the letters, and that they were mailed with the other correspondence. From the evidence of J. F. Myers it appears that a correspondence was had with the plaintiffs in error in regard to his dealings with them. One letter, dated November 2, 1887, and an invoice of the bill of goods, showing a consignment by R. G. Wallace & Co. to J. F. Myers of certain merchandise, were admitted in evidence without objection; and it was shown from the testimony of the witness that he had received a letter or letters prior to the date of November 2d; that he had made diligent search for all the correspondence between him and the plaintiffs below, and had been unable to find the letters; that he had received only the shipments he had testified to from Wallace & Co., and had had no other dealings with the firm. From another witness it appeared that there was a letter dated October 29, addressed to J. F. Myers, Eureka, Kansas, and that the evidence offered was the original copy of that letter; that he saw Mr. Wallace write the letter dated October 31, and that it was mailed with the office letters. The letter-book containing the original copies of these letters was before the court below, and we think there was sufficient foundation laid for admitting the copies in evidence.

"The principle, based as it is upon the assumption that, as absolute certainty in such proof cannot be obtained, it is enough, in order to make out a *prima facie* case, to show that a letter is forwarded in a way in which letters are usually received, applies to other than postoffice delivery." (2 Wharton, Ev., § 1327; 1 Taylor, Ev., 202.)

II. It is next insisted that the court below should have sustained the demurrer of the defendants below to the evidence, for the reason that there was no evidence to prove that the goods replevied had not been paid for. We do not think this was necessary. The invoice offered in evidence, and the letters introduced, showed clearly that the goods were consigned to Myers, to be sold in the usual course of business, by retail; and the title was to remain in the consignors until the goods were paid for. The transfer of the title depended on the payment, and no evidence of payment was necessary to entitle the plaintiffs below to recover.

III. The plaintiffs in error contend that the findings of fact made by the court below are not sustained by the evidence; that there was no proper evidence on the trial to show that the goods were consigned to J. F. Myers with the understanding that the title to the goods was to remain in the plaintiffs below until paid for, or sold in the regular course of trade as a retail merchant. This raises substantially the same question we have already decided. We think there was sufficient evidence upon which to base the finding the court made. The evidence of the plaintiffs below was to the effect that the goods were consigned to J. F. Myers. The invoice of the bill of goods reads: "Consigned by R. G. Wallace & Co. to J. F. Myers." It is true that it also contained a memorandum, "Sold by Berry," but this only indicated the salesman who took the order. The letters of October 29 and 31 also indicated that goods had been consigned to Myers. Now the word "consigned" has a well-defined legal meaning. "To consign, in the mercantile law, is ordinarily to send or transmit the goods to a merchant or factor for sale; and a consignee is, consequently, the person to whom they are consigned, shipped, or otherwise transmitted." (3 Am. and Eng. Encyc. of Law, 667.) Consigned implies agency. (3 Keyes, N. Y., 17.)

We do not think the defendants below were in a position to raise the question of estoppel. The goods were shipped to be sold by retail, and this gave no authority to dispose of

the goods of plaintiffs below with the stock previously owned by Myers. The power to sell in the regular retail way does not create a scope of authority to sell at wholesale or to trade the stock of goods. (1 Lawson, Rights, Rem. & Pr., § 65.)

We find no reversible error in the record of this case, and recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.