### McELWAIN–BARTON SHOE CO. v. BASSETT.

#### In re ADKINS.

(Circuit Court of Appeals, Eighth Circuit. February 28, 1916.)

#### No. 4547.

1. BANKRUPTCY ⬦140(1)—TITLE OF TRUSTEE—CONSIGNMENT TO FACTOR—CONTRACT.

A contract by which a corporation agreed to consign shoes to the bankrupt for sale by him, the bankrupt to pay the freight and storage charges, and to keep the shoes insured for the benefit of the consignor, and to account to the consignor for the net price fixed in invoices, which were to be attached to the contract, and permitting the bankrupt to sell the shoes at such price as would enable him to pay his commission and all expenses, but reserving title in the consignor, is a contract of factorage, not of sale, which is valid, and not required by the laws of Kansas to be recorded.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199; Dec. Dig. ⬦140(1).]

2. BANKRUPTCY ⬦140(1)—TITLE OF TRUSTEE—CONSIGNMENT—IRREGULARITIES.

That the parties to such contract conducted the business in relation

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

thereto in an irregular manner did not avoid the contract, so long as no creditor of the bankrupt was thereby misled to his injury.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199; Dec. Dig. ☞140(1).]

3. BANKRUPTCY ☞140(1)—TITLE OF TRUSTEE—CONSIGNMENT—BILLING OF GOODS.

The billing of the shoes by the consignor upon its ordinary blank forms, without reference to the contract, does not overcome the contract itself, and undisputed testimony that the shoes claimed were shipped under its terms, so as to establish a sale of the shoes to the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199; Dec. Dig. ☞140(1).]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

In the matter of W. C. Adkins, bankrupt. From an order of the District Court, denying the claim of McElwain-Barton Shoe Company to certain shoes in the possession of George R. Bassett as trustee, the claimant appeals. Reversed and remanded, with directions.

H. T. Dedrick and W. M. Dedrick, both of Wichita, Kan., and Edgar C. Ellis, Hale H. Cook, and Raymond G. Barnett, all of Kansas City, Mo., for appellant.

C. V. Ferguson and E. J. Dierks, both of Wichita, Kan., for appellee.

Before ADAMS and CARLAND, Circuit Judges, and TRIEBER, District Judge.

CARLAND, Circuit Judge. Appeal from an order of the District Court for the District of Kansas, which denied the appellant the right to recover certain shoes in the possession of appellee, as trustee of the estate of W. C. Adkins, a bankrupt. The facts of the case which condition the correctness of the decision below are substantially as follows:

By contract made May 25, 1914, the appellant appointed Adkins its authorized agent at Wichita, Kan., for the sale on commission of shoes thereafter to be shipped by appellant to Adkins under said contract. The invoices of said shoes were to be attached to the contract, which was executed in duplicate, as the shoes were shipped. The appellant in and by said contract agreed to consign to Adkins upon his request shoes during the continuance of the contract. Adkins agreed to receive the shoes from the transportation companies and pay all transportation charges, to furnish proper warehouse room for all shoes consigned, to pay all taxes, license, rent, and all other expenses incidental to the safe-keeping and sale of the shoes, and to waive all claims against appellant for such expense, to keep such shoes insured for their full value, at the expense of Adkins, in the name and for the benefit of appellant, in companies approved by it, to turn over the policies to it, and, in case of neglect or failure to insure, to become personally responsible for any loss or damage that might occur to the shoes while in the custody of Adkins, to keep samples of said shoes

set up in salesrooms suitable for the purpose, to make all reasonable efforts to sell the same, and not to sell any other make of shoes to the exclusion of those consigned under the terms of the contract, and to sell the shoes consigned for enough more than the net amounts to be received therefor by appellant, and set opposite said shoes in the invoices and schedules to be attached to the contract, to pay all freights, taxes, expenses, charges, compensation, and commissions for the handling and selling of said shoes, and the doing of all things provided to be done by Adkins; it being mutually understood that the net amounts set opposite said shoes in the schedules or invoices should be the net prices at which said shoes were to be consigned for sale, and were the net amounts which Adkins agreed to account for and deliver to appellant for said shoes when sold as per terms of the contract— the full charges, compensation, commission, and expenses of Adkins for the handling and selling of the shoes, and the doing of all things stated in the contract to be performed by Adkins, to be the difference between the net amounts and the gross amounts received from the sale of the shoes. Adkins also agreed not to part possession with any of the shoes until full and satisfactory settlement should have been made for the same by the purchaser thereof, and that he would not allow under any circumstances any such shoes to be taken away on approval before such settlement was made, and that all proceeds of such sales, whether cash or notes, should be kept separate and distinct from the other business of said Adkins. Adkins further agreed to make out and render to appellant on the 1st day of every alternate month, and oftener if so requested, a full and complete report of all sales made the two months previous, or since the last report made, and to accompany said report with a full settlement in accordance with the contract for all shoes reported sold. It was further agreed between the parties to the contract that the shoes to be supplied thereunder were to be consigned simply, and that the title to and ownership of all shoes consigned to Adkins under the contract, and all proceeds of the sale of same, should remain vested in appellant, and be its sole property and subject to its order, until the full amount to be received for said goods should have been received by appellant. The contract was to remain in force until January 1, 1915, unless canceled and annulled by appellant. At the termination of the contract Adkins agreed to return all shoes remaining on hand and unsold to appellant at their warehouse in Kansas City in good order and free from all freight charges.

It appears in the record that in the actual transaction of the business of the contract the request for shoes made by Adkins, and the bills or invoices made out by appellant when the shoes would be shipped to Adkins, were not actually attached to the contract, the original of which was in the possession of appellant and the duplicate in possession of Adkins. The invoices also were made out on the blank forms commonly used by appellant in the ordinary business of selling shoes. It does not appear that Adkins insured the shoes as provided in the contract. At the time Adkins filed his voluntary petition in bankruptcy on January 28, 1915, there was in his possession shoes shipped by appellant to him under the terms of the contract which had not been

paid for. The subsequent disposition of the same appears from the following stipulation:

"That the said McElwain-Barton Shoe Company have heretofore filed and have now pending a petition in reclamation for certain shoes in the possession of the said Geo. R. Bassett, as trustee of the said bankrupt estate; that said shoes have this day been, with other assets of said estate, exposed to sale, and the said McElwain-Barton Shoe Company have purchased for $600 said shoes claimed in said reclamation petition, now on hand, and they shall take said shoes, and if said petition in reclamation is determined in their favor no payment shall be made on said purchase, and if their petition be not sustained, and the property is determined to be that of the trustee, then the McElwain-Barton Shoe Company will pay into the hands of Geo. R. Bassett, trustee, the said sum of $600."

The trial court held that, as the invoices of the shoes were not formally attached to the contract as provided for therein and the shoes were not insured, the parties to the contract had departed therefrom to such an extent that the shoes which appellant seeks to recover were sold in the regular course of trade, and the title thereto passed to Adkins, so as to defeat the right of appellant to recover the goods under the terms of the contract. Mr. E. E. Pearson, the credit man of appellant, positively testifies that the shoes were shipped under and by virtue of the terms of the contract, and there is no evidence to the contrary, except the mere fact that the billing of the shoes by appellant was made on the ordinary blank forms used by it in the ordinary course of its business, and did not refer to the contract, nor were the invoices attached to the same.

[1] There is no evidence in the record that any creditor of Adkins was misled in any way by the course of dealings between appellant and Adkins. The referee, whose order disallowing the claim of appellant was confirmed by the District Court, decided that the contract itself was a fraud upon the public, and, as it had not been recorded, was void. We are of the opinion that the contract on its face was not an absolute sale, nor a conditional sale, but was a contract of factorage. Contracts of this kind have uniformly been held valid. Ellet-Kendall Shoe Co. v. Martin, 222 Fed. 851, 138 C. C. A. 277 (8th Circuit); Ludvigh, Trustee, v. American Woolens Co., 231 U. S. 522, 34 Sup. Ct. 161, 58 L. Ed. 345; Id., 188 Fed. 30, 110 C. C. A. 180; National Bank of Augusta v. Goodyear, 90 Ga. 711, 16 S. E. 962; Cortland Wagon Co. v. Sharvy, 52 Minn. 216, 53 N. W. 1147; Thornton v. Cook, 97 Ala. 630, 12 South. 403; Conable v. Lynch, 45 Iowa, 84; Heim Brewing Co. v. Linck, 51 Mo. App. 479; Bank v. Benedict Co., 74 Fed. 182, 20 C. C. A. 377; Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 99, 37 L. Ed. 1093; Renoe v. Milling Co., 53 Kan. 255, 36 Pac. 329; Big Four Implement Co. v. Wright, 207 Fed. 535, 125 C. C. A. 577, 47 L. R. A. (N. S.) 1223 (8th Circuit); Powell v. Wallace, 44 Kan. 656, 25 Pac. 42. As a contract of factorage, no public record of the same was required by the laws of Kansas in order to make it valid, as against creditors. Ellet-Kendall Shoe Co. v. Martin (supra), 222 Fed. 851, 857, 138 C. C. A. 277; Powell v. Wallace, 44 Kan. 656, 25 Pac. 42; Van Arsdale v. Peacock, 90 Kan. 347, 349, 133 Pac. 703; Jones v. Coates, 196 Fed. 860, 116 C. C. A. 422.

[2] The fact that the parties to the contract conducted the business in relation thereto in an irregular manner, so long as no creditor of Adkins was misled to his injury thereby, did not avoid the contract. Bank v. Goodyear, supra, 90 Ga. 711, 16 S. E. 962; Thompson & Co. v. Barnum & Co., supra, 49 Iowa, 392; Sturm v. Boker, supra, 150 U. S. 312, 14 Sup. Ct. 99, 37 L. Ed. 1093; Schenck v. Saunders, 13 Gray (Mass.) 37, 40.

[3] The billing of the shoes by appellant upon the ordinary blank forms, without reference to the contract, cannot be allowed to overcome the contract itself, and the other undisputed testimony that the shoes were shipped under the terms of the contract. The witness Pearson also testified that the contract continued from May until the last shipment in December, 1914, and that the same was never modified or superseded by any other arrangement between the parties. We have no doubt but that upon the facts and the law appellant is entitled to recover.

The judgment below is therefore reversed, and the case remanded for judgment in accordance with the stipulation hereinbefore quoted.